Richard D. MOSER and Twyla
S. Moser, Appellants,

v.

Steven CLINE and Vickie
Cline, Respondents.

No. WD 67102.

Missouri Court of Appeals,
Western District.

Feb. 20, 2007.

Robert C. Black, Platte City, for Appellant.

Steven Cline, Weston, pro se.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

ROBERT G. ULRICH, P.J.

Richard and Twyla Moser appeal the judgment of the trial court in their action for unlawful detainer against Steven and Vickie Cline. They claim that the trial court erred in (1) failing to award double-rent damages for the period of the Clines' unlawful detainer under section 534.330, RSMo 2000, (2) allowing the Clines' counterclaim of breach of implied warranty of habitability in their unlawful detainer action, (3) finding for the Clines' on the counterclaim of breach of implied warranty of habitability, and (4) awarding money damages to the Clines for breach of implied warranty of habitability.[1] The judg-

---

1. The points on appeal are not necessarily addressed in the order presented by the ap-

ment is affirmed in part and reversed in part, and the case is remanded with directions.

## Facts

On December 4, 2005, Richard and Twyla Moser leased a house located at 606 Market Street in Weston, Missouri, to Steven and Vickie Cline for $355 per month. When the Clines failed to pay the rent due, the Mosers made written demand on January 12, February 13, and March 1, 2006, that the Clines vacate the premises. They also notified the Clines that they were terminating the lease effective March 17, 2006. The Clines failed to vacate the premises, and the Mosers filed a petition for unlawful detainer and for rent and possession on March 24, 2006. The petition alleged that the Clines failed to pay the rent when due and that after giving sixty days notice, the Mosers terminated the lease effective March 17, 2006. In Count I for unlawful detainer, the Mosers requested a judgment in their favor ordering the Sheriff to restore possession of the property to them and awarding double the rent ($355 per month) from the date of the lease termination until possession is restored. In Count II for rent and possession, the Mosers requested a judgment in their favor for possession of the property and awarding them $573.00 in rent due

prior to termination of the lease and for reasonable attorney fees and costs.

During trial, the Mosers presented evidence regarding the Clines' default of the lease for failure to pay rent,[2] the termination of the lease, and the Clines' failure to restore possession after written demand was made. The Mosers also presented evidence that the Clines owed $573.99 in unpaid rent plus late fees and interest for the period up to the termination of the lease on March 17, 2006. In their defense, the Clines offered evidence that at the end of December 2005, the basement of the home was flooded with sewage after the sewer line backed up; that they had to carry 200 gallons of sewage water out of the basement by hand over a ten day period; that as a result of the flooding, hundreds of dollars worth of their personal property was ruined including their daughter's wedding things, irreplaceable picture albums, and a bed; that they could not use the restroom, shower, or washing machine in the house; and that the house still smelled of sewage as of the date of trial. The trial court apparently construed this evidence as a defense or counterclaim for breach of implied warranty of habitability.[3]

The trial court entered its judgment in favor of the Mosers on both claims and further found that the Mosers breached

pellants.

2. At trial, Mr. Moser testified that in addition to terminating the lease based on the Clines' failure to pay rent, he also terminated the lease because the property had become untenantable due to a sewer problem. In the first written demand, the Mosers referred to a lease provision titled DAMAGES TO PREMISES as the additional reason for terminating the lease. They stated, "The damage that has incurred to the property is far too expensive for us to maintain this property as a rental unit and we choose to put it on the open market for sale." Ms. Cline testified that she was never told the lease was being terminated

based on the untenantable condition of the property she said she was only told that the Mosers wished to sell the property rather than make the expensive repair. Nevertheless, the Mosers only alleged the Clines' default due to nonpayment of rent as the reason for terminating the lease in their petition for unlawful detainer and for rent and possession.

3. On appeal, the Mosers do not contend that the trial court erred in considering the Clines' claim for breach of implied warranty of habitability despite their failure to file a written pleading alleging such claim. *See* § 517.031.2.

the warranty of habitability due to the sewer problems in the residence. It ordered that the Mosers recover possession of the premises from the Defendants as well as damages in the amount of $200. The Mosers filed a post-trial motion to amend the judgment as to the amount of money damages. The trial court overruled the motion, and this appeal by the Mosers followed.

### Unlawful Detainer

In point one, the Mosers contend that the trial court erred in failing to award double-rent damages under section 534.330, RSMo 2000, for the period of the Clines' unlawful detainer. In their petition, the Mosers sought possession of the premises and double rent damages from the date of the lease termination until possession is restored on their unlawful detainer claim and $573.99 for rent owed before termination of the lease on their rent and possession claim. The trial court found in favor of the Mosers on both of their claims. Although the trial court did not specify to which claim the $200 damages award applied, it apparently meant to set off the Mosers' damages in their rent and possession claim by the Clines' damages in their breach of implied warranty of habitability claim and to award only possession of the premises for unlawful detainer. This is because counterclaims are prohibited in unlawful detainer actions regardless of the subject matter unless permitted by statute, and Missouri statutes do not so permit. *Walker v. Anderson*, 182 S.W.3d 266, 269 (Mo.App. W.D.2006)(quoting *Cent. Bank of Kansas City v. Mika*, 36 S.W.3d 772, 774 (Mo.App. W.D.2001)); *Broken Heart Venture, L.P. v. A & F Rest. Corp.*, 859 S.W.2d 282, 286 (Mo.App. E.D. 1993). " 'The principle issue in an unlawful detainer action is the immediate right of possession.' " *Walker*, 182 S.W.3d at 266 (quoting *S.L. Motel Enters., Inc. v. E.*

*Ocean, Inc.*, 751 S.W.2d 114, 117 (Mo.App. E.D.1988)). Issues relating to title or matters of equity, such as a claim of set-off against rent, cannot be interposed as a defense in unlawful detainer actions. *Id.* (quoting *S.L. Motel*, 751 S.W.2d at 117; citing § 534.210, RSMo 2000); *Broken Heart Venture*, 859 S.W.2d at 285, 286. Because the trial court found for the Clines in their breach of implied warranty of habitability claim and the Clines were prohibited from asserting the claim as a defense or counterclaim to the Mosers' unlawful detainer claim, the trial court's award of $200 in damages to the Mosers must have been for their rent and possession claim minus the damages incurred by the Clines for breach of warranty. Thus, although finding in favor of the Mosers on their unlawful detainer claim, the trial court did not award any damages to the Mosers for that claim. This was error.

Section 534.330.1, RSMo 2000, of the unlawful detainer statutes provides:

> If the verdict of the jury or the finding of the judge is for the complainant, the judge shall record the verdict and finding, and the judgment shall be that the complainant have restitution of the premises found to have been forcibly or unlawfully detained, and recover from the defendant the sum of . . . . . . dollars, double the sum assessed by the jury, or found for his damages; and also the rate of . . . . . . dollars, double the sum found per month, for rents and profits, from the . . . . . . day of . . . . . ., 19 . . ., the day of judgment, until restitution be made, together with costs.

Damages for unlawful detainer are allowed from the time of the demand for possession up to the date the tenants vacate the premises. *S.L. Motel*, 751 S.W.2d at 119 (citing *Lucas Hunt Vill. Co. v. Klein*, 358 Mo. 1054, 218 S.W.2d 595, 599 (banc

1949)). Furthermore, the judgment must double the sum assessed for damages and also for monthly rents and profits up to the time of restitution. *Gordon v. Williams,* 986 S.W.2d 470, 474 (Mo.App. E.D.1998); *S.L. Motel,* 751 S.W.2d at 119 (quoting *Klein,* 218 S.W.2d at 599)).

The trial court found in favor of the Mosers that the Clines unlawfully held over after the termination of the lease on March 17, 2006, and such finding was supported by sufficient evidence. Thus, under section 534.330.1, the trial court was required to award the Mosers double rent damages from March 17, 2006, until the time the premises were restored to the Mosers. The judgment of the trial court finding in favor of the Mosers on their unlawful detainer action and awarding them possession of the premises is affirmed. That part of the judgment regarding damages for unlawful detainer is, however, reversed, and the case is remanded for determination of when restitution of the premises was made, calculation of double rent damages, and judgment in accordance with section 534.330.1.

### Breach of Warranty of Habitability

In their second point on appeal, the Mosers claim that the trial court erred in allowing the Clines' counterclaim of breach of implied warranty of habitability in their unlawful detainer action because affirmative defenses and counterclaims are prohibited in such actions. As discussed in point one above, the Mosers are correct that counterclaims are prohibited in unlawful detainer actions. *Walker,* 182 S.W.3d at 269. In this case, however, the Mosers did not bring only an unlawful detainer action. Their petition alleged two causes of action—unlawful detainer, section 534.030, RSMo 2000, and rent and possession, section 535.020, RSMo Cum.Supp. 2004. The doctrine of election of remedies does not bar bringing both because both are summary possession proceedings, and a landlord may pursue one or more summary proceedings to recover possession of its property. *Ellsworth Breihan Bldg. Co. v. Teha Inc.,* 48 S.W.3d 80, 82–83 (Mo.App. E.D.2001). Additionally, tenants may use a breach of implied warranty of habitability as a defense to a landlord's action for possession and rent and as the basis for an affirmative suit for damages. *Detling v. Edelbrock,* 671 S.W.2d 265, 270 (Mo. banc 1984). The Clines' counterclaim for breach of warranty of habitability was properly brought as a defense to the Mosers' rent and possession action and as the basis for an affirmative suit for damages. The trial court did not err in allowing the claim.

In point three, the Mosers claim that the trial court erred in finding for the Clines' on the counterclaim of breach of implied warranty of habitability because the Clines failed to prove an essential element of the claim. "[A] landlord impliedly warrants the habitability of leased residential property." *Id.* The landlord guarantees that he will provide facilities and service vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes. *Id.* (quoting *King v. Moorehead,* 495 S.W.2d 65, 75 (Mo.App.1973)). To constitute a breach of the warranty of habitability, the tenant must allege and prove conditions of such a nature as to render the premises unsafe or unsanitary. *Id.* "The materiality of a breach of warranty claimed by a tenant shall be determined by factors, among others, of the nature of the deficiency or defect, its effect on the life, health or safety of the tenant, length of time it has persisted and the age of the structure." *King,* 495 S.W.2d at 76. To establish breach of the warranty of habitability, the tenant must prove the following elements:

(1) entry into a lease for residential property; (2) the subsequent development of dangerous or unsanitary conditions on the premises materially affecting the life, health and safety of the tenant; (3) reasonable notice of the defects to the landlord; and (4) subsequent failure to restore the premises to habitability.

*Detling,* 671 S.W.2d at 270; *Chiodini v. Fox,* 207 S.W.3d 174, 176 (Mo.App. E.D. 2006). A tenant must allow the landlord reasonable time to alleviate the defects. *Chiodini,* 207 S.W.3d at 177.

■ The Mosers allege that the Clines failed to prove the fourth element—failure to restore the premises to habitability. They contend that the uncontroverted evidence shows that they did restore the premises to habitability after the sewer backed up and flooded the basement. The undisputed evidence revealed that the Clines called Mr. Moser on December 29, 2005, and notified him of a clogged sewer. He told them to put four bottles of liquid gel drano down the drain to fix the problem. The Clines called Mr. Moser back on January 11, 2006, and informed him that the fix did not work. Mr. Moser called a plumber that day. The plumber informed Mr. Moser that the sewer line might have collapsed or was badly clogged and that a new sewer line would need to be installed. The installation of a new sewer line would involve acquiring city permits to cut the street, which would cause at least a two-week delay. Mr. Moser testified that he determined that the repair would be better done if no one lived in the house; therefore, he notified the Clines of his intent to terminate the lease based on the house becoming untenantable as well as failure to pay rent. Ms. Cline testified that she was never told the lease was being terminated

based on the untenantable condition of the property. She said she was told only that the Mosers wished to sell the property rather than make the expensive repair. Regardless, the repair, costing in excess of $5,000, was eventually made while the Clines continued to live in the house. The Clines did not dispute that the repair was made. Although the record is unclear when the repair was finally made, the Clines had the burden to prove that the landlord failed to remedy the problem within a reasonable amount of time. Thus, the Clines failed to prove their breach of warranty of habitability claim, and the trial court erred in finding for the Clines on the claim and in awarding damages for it by offsetting the Mosers' damages in their rent and possession claim.[4] The judgment in favor of the Clines on their breach of warranty of habitability claim is, therefore, reversed. Likewise, the $200 damages award to the Mosers on their rent and possession claim, which was offset by damages for breach of implied warranty of habitability, is reversed, and the case is remanded for recalculation of damages on the rent and possession claim without such offset.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded with directions in accordance with this opinion.

LOWENSTEIN and SMART, JJ., concur.

---

4. Because point three is dispositive on the breach of warranty of habitability claim, point four regarding the award of money damages for the claim need not be addressed.